Mr. John W. Bowen Pinellas County School Board Attorney Post Office Box 2942 Largo, Florida 33779-2942
Dear Mr. Bowen:
On behalf of the School Board of Pinellas County, you have asked for my opinion on substantially the following questions:
1. Are communications between a member of the school board or the school superintendent, and the school board attorney, privileged attorney-client communications?
2. If such communications are privileged, is the school board attorney prohibited from confirming, in writing, any oral advice given to a school board member when the written confirmation will be a public record subject to inspection under section 119.07, Florida Statutes (1996 Supplement)?
3. Can the school board attorney discuss with any member of the leadership team (consisting of the school board and superintendent) any conversation or information provided by any other member of the leadership team without violating any individual school board member's rights?
In sum:
1. Discussions regarding school business between individual school board members and the school board attorney are not attorney-client conversations and, therefore, are not privileged communications.
2. A school board attorney may memorialize, in writing, any conversations with an individual school board member or the superintendent. These documents are public records subject to inspection and copying pursuant to section 119.07(1), Florida Statutes (1996 Supplement).
3. No violation of any constitutional due process or privacy right of either the custodian or the subject of public information would occur if such information is discussed or considered by the school board attorney and the board members and the superintendent.
According to your letter, the School Board of Pinellas County has asked you to request an Attorney General's Opinion regarding the relationship between individual members of the school board and the school board attorney. You are employed by the school board as their full-time, in-house school board attorney. The school board also employs a superintendent of schools pursuant to section 230.241, Florida Statutes. As part of your enumerated duties and responsibilities as school board attorney, you must advise the superintendent and school board on all legal matters relating to the operations of the district. Questions have arisen concerning the existence of the attorney-client privilege, and whether individual school board members and the superintendent can invoke the attorney-client privilege to keep communications between the individual school board members or the superintendent, and the school board attorney, confidential.
Question One
Section 286.011, Florida Statutes, the Government in the Sunshine Law, requires that the meetings of public boards or commissions be open to the public. Pursuant to section 286.011(1), Florida Statutes:
"All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings."
Florida courts have concluded that it was the intent of the Legislature to extend the application of the Sunshine Law to "every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control."[1]
This office has determined that district school boards are among those collegial bodies subject to the Sunshine Law.[2]
The Government in the Sunshine Law has been construed to apply to all meetings between governmental agencies and their attorneys. In 1993, the Legislature enacted a specific exemption from the open meetings requirement of section 286.011(1), Florida Statutes, for meetings between an entity's attorney and certain designated individuals to discuss settlement negotiations or strategy sessions related to litigation expenditures. However, as this office recognized in Attorney General's Opinion 95-6:
"Section 286.011(8), Florida Statutes, does not create a blanket exception to the open meeting requirement of the Sunshine Law for all meetings between a public board or commission and its attorney. The exemption is narrower than the attorney-client communications exception recognized for private litigants. Only discussions on pending litigation to which the public entity . . . is presently a party are subject to its terms. Such discussions are limited to settlement negotiations or strategy sessions related to litigation expenditures."[3]
No general attorney-client privilege has ever been recognized for purposes of the Government in the Sunshine Law.[4] In Neu v. MiamiHerald Publishing Company,[5] a Florida Supreme Court case decided in 1985, the Court considered whether an attorney-client privilege was created by section 90.502, Florida Statutes, by which governmental bodies could meet privately with their attorneys. The Court stated:
"Section 90.502(1)(c) provides that `[a] communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons. . . .' The Law Revision Council Note to section (1), Florida Statutes Annotated 90.502 (1979), comments that `[w]hen the communication is made in public . . . the intent to keep the communication confidential is lacking and the privilege cannot be claimed.' The Sunshine Law explicitly provides for public meetings; communications at such public meetings are not confidential and no attorney/client privilege can arise therefrom."[6]
Further, the Court went on to determine that:
"[T]here are no confidential communications to protect when the communications occur in a public meeting. Finally, the attorney/client privilege belongs to the client, not the attorney. The legislature has plenary constitutional authority to regulate the activities of political subdivisions and can require, as it has done in section 286.011, that meetings be open to the public."[7]
Thus, in the instant case, the school board is subject to the terms of section 286.011, Florida Statutes. Discussions involving the school board and its attorney are also subject to the Government in the Sunshine Law, with an exception for discussions relating to settlement negotiations or strategy sessions related to litigation expenditures. Under provisions of the Florida Evidence Code, no attorney-client privilege attaches to public conversations.
Therefore, communications regarding school business between individual members of the school board and the school board attorney are not privileged communications since it is the school board as a collegial body that is the client, and these meetings are subject to the Government in the Sunshine Law.
In contrast to the school board, which is a collegial body, the superintendent of schools is an individual employee of the board. Therefore, conversations between the superintendent and the school board attorney are not generally subject to the requirements of section 286.011, Florida Statutes.[8] Unless the superintendent has been delegated the authority to act on behalf of the school board in a decision-making capacity in meetings with the school board attorney, in which case compliance with the Sunshine Law is required,[9] such conversations are not subject to section286.011, Florida Statutes.
However, while these conversations may not be subject to the Government in the Sunshine Law, they are also not privileged conversations for which confidentiality may be asserted. As discussed above, a privileged communication between a lawyer and client is confidential if it is not intended to be disclosed to third persons. The attorney-client privilege belongs to the client, and the client in this instance is the school board, which is bound to follow the dictates of the Government in the Sunshine Law.
While this office recognizes that the school board attorney is responsible for providing legal services to his client, the school board, and to the superintendent of schools, these services are not personal to the individual members of the board or the superintendent and should not be the subject of requests for legal advice from the school board attorney.
Question Two
As discussed above, there is no general attorney-client privilege for oral communications between the school board attorney and individual members of the school board or the superintendent. In light of the public nature of such discussions, there is no prohibition against the school board attorney memorializing, in writing, any advice given during such discussions. These documents would be public records subject to inspection and copying pursuant to section 119.07(1), Florida Statutes (1996 Supplement).
Question Three
Your last question relates to possible violations of constitutional rights that may occur if the school board attorney discusses or otherwise considers with others any conversation with, or information from, an individual member of the school board or the superintendent.
The Florida Supreme Court has rejected claims that constitutional privacy rights and due process rights are impacted by compliance with the Government in the Sunshine Law or the Public Records Law. In Neu v. Miami Herald Publishing Company,[10] a 1985 case, the petitioners, who were the members of the city council, argued that they had a due process right under the Fourteenth Amendment to the United States Constitution to privately consult with their attorney. The Court rejected this assertion, pointing out that there is a distinction between due process rights of governmental entities and private persons, and stated that "[i]t is enough to say that the legislature has the power to require open meetings and that petitioners' argument has been rejected by the United States Supreme Court."[11]
Further, the Florida Supreme Court has rejected claims that constitutional privacy interests operate to shield public records from disclosure. In Michel v. Douglas,[12] the Court held that the state constitution does not provide a right of privacy in public records, and that a state or federal right of disclosural privacy does not exist in such records.[13] In Florida, "neither a custodian of records nor a person who is the subject of a record can claim a constitutional right of privacy as a bar to requested inspection of a public record which is in the hands of a government agency."[14]
Thus, no violation of the constitutional due process or privacy rights of either the custodian or the subject of public information would occur if this information is discussed or otherwise considered between the school board attorney and other board members or the superintendent. However, care must be taken that an individual not act as a go-between among the members to communicate information more appropriately discussed at a public meeting at which other members and the public may participate in the discussion.[15]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, e.g., Times Publishing Company v. Williams,222 So.2d 470, 473 (Fla. 2d DCA 1969).
[2] Attorney General's Opinion 71-389 (1971).
[3] And see, School Board of Duval County v. Florida PublishingCompany, 670 So.2d 99 (Fla. 1st DCA 1996), agreeing with Op. Att'y Gen. Fla. 95-6 (1995), and quoting the opinion extensively.
[4] See, Neu v. Miami Herald Publishing Company, 462 So.2d 821
(Fla. 1985).
[5] Id.
[6] Supra fn. 4 at 824.
[7] Supra fn. 4 at 825.
[8] See, Deerfield Beach Publishing, Inc. v. Robb,530 So.2d 510, 511 (Fla. 4th DCA 1988) (requisite to application of the Sunshine Law is a meeting between two or more public officials);City of Sunrise v. News and Sun-Sentinel Company, 542 So.2d 1354
(Fla. 4th DCA 1989); Mitchell v. School Board of Leon County,335 So.2d 354 (Fla. 1st DCA 1976).
[9] See, e.g., Ops. Att'y Gen. Fla. 95-6 (1995) (if a person designated by a board is authorized, either formally or informally, to exercise any decision-making authority on behalf of the board, i.e., to reject or modify certain contract provisions or terms, that person would be acting on behalf of the board and any such meetings are subject to the Sunshine Law); 74-294 (1974) (section 286.011, Fla. Stat., would apply to meetings of a single member of a board who had been delegated the board's authority to lease land relating to that issue).
[10] Supra fn. 4.
[11] Neu, supra fn. 4 at 825, citing Williams v. Mayor ofBaltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933).
[12] 464 So.2d 545 (Fla. 1985).
[13] See also, Forsberg v. Housing Authority of City of MiamiBeach, 455 So.2d 373 (Fla. 1984); Shevin v. Byron, Harless,Schaffer, Reid and Associates, Inc., 379 So.2d 633 (Fla. 1980).
[14] Williams v. City of Minneola, 575 So.2d 683, 687 (Fla. 5th DCA 1991), review denied, 589 So.2d 289 (Fla. 1991), appeal afterremand, 619 So.2d 983 (Fla. 5th DCA 1993).
[15] See, Blackford v. School Board of Orange County,375 So.2d 578 (Fla. 5th DCA 1979); Sentinel Communications Company v. SchoolBoard of Osceola County, No. CI92-0045 (Fla. 9th Cir. Ct. April 3, 1992).